UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLEAR CHANNEL OUTDOOR, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24 C 719 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| KARKIF I, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Clear Channel Outdoor, LLC ("CCO") and Defendant Karkif I, LLC ("Karkif") had an agreement that allowed CCO to place advertising structures on Karkif's property. After the parties could not agree to an extension of the agreement, instead allowing the agreement to expire, Karkif denied CCO access to the property to remove the structures. In response, CCO filed this lawsuit against Karkif, bringing claims for breach of contract (Count I) and detinue (Count II), and, in the alternative, conversion (Count III) and unjust enrichment (Count IV). Karkif now moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss CCO's complaint. The Court finds that CCO has sufficiently pleaded its breach of contract, detinue, and conversion claims. But because CCO incorporated the parties' written contract into its allegations regarding the unjust enrichment claim, that claim cannot stand as pleaded.

## BACKGROUND[1]

CCO, a Delaware limited liability company, is an outdoor advertising company that owns and operates advertising structures such as billboards and digital technology displays throughout

---

[1] The Court takes the facts in the background section from CCO's complaint, and the exhibit attached thereto, and presumes them to be true for the purpose of resolving Karkif's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

the United States. Karkif, an Illinois limited liability company, owns the property located at 600 North LaSalle Street, Chicago, Illinois.

On January 13, 2019, CCO and Karkif entered the Clear Channel Outdoor Lease Agreement (the "Lease"). CCO agreed to pay rent to Karkif to operate two advertising structures (the "Structures") on Karkif's property. The parties agreed to a five-year lease period unless they terminated the Lease or extended it after negotiations. Throughout 2023 and continuing into 2024, the parties attempted to negotiate a renewal but ultimately failed to reach an agreement. The Lease expired on January 13, 2024.

The Lease sets forth CCO's rights and responsibilities relevant to its installation, maintenance, and removal of the Structures:

> [CCO] has the sole right, and is hereby obligated, to make necessary applications with, and obtain permits from, governmental entities for the use, maintenance, and removal of the Structures, and [Karkif] shall reasonably cooperate at no cost to [Karkif]. . . . [CCO] is the owner of the Structures under this Lease and has the right to remove the Structures at any time but in no event later than the date of termination or expiration of this Lease. [Karkif] shall provide all reasonably necessary access to Tenant for such removal. [CCO] shall, at [CCO]'s sole expense, comply with all laws, rules or regulations of any governmental entity relating to [CCO]'s use of the leased premises. [CCO] is solely responsible for obtaining and maintaining, any and all requisite governmental and quasi-governmental approvals (the foregoing the "approvals") related to, and/or required for, [CCO]'s use of the leased premises.

Doc. 6 ¶ 5 (emphasis omitted). In apparent contradiction with this provision, the Lease also provides CCO with five business days after the Lease's expiration to remove the Structures from Karkif's property. *Compare id.* ("[CCO] . . . has the right to remove the Structures at any time but in no event later than the date of termination or expiration of this Lease."), *with id.* ¶ 6 ("By not later than five (5) business days after the expiration of the . . . Lease, [CCO] shall remove the Structures[.]"). Because the Lease expired on January 13, 2024, CCO had until January 19, 2024

to remove the Structures. The Lease also states that if CCO fails to comply with the removal provisions and timeline, then CCO's occupancy of the premises automatically converts to a tenancy at sufferance.[2] Upon that occurrence, the Lease provides that CCO will owe additional rent each month. *See* Doc. 6 ¶ 6 ("[CCO] shall pay an amount . . . equal to two hundred percent (200%) of the sum of the rent due for the period immediately preceding the holdover."). The Lease also provides that under such a tenancy at sufferance, Karkif can immediately recover possession of the leased premises via summary proceedings and may itself remove the Structures at CCO's expense. *See id.* ("No holdover by [CCO] . . . shall . . . prevent [Karkif] from removing the Structures, the cost of which shall be borne solely by [CCO].").

In January 2024, sometime in the week before the Lease expired, Karkif demanded ownership of the Structures. CCO informed Karkif on January 12, 2024, that it would not transfer ownership of the Structures to Karkif. CCO also sent a letter to Karkif on January 17, 2024, repeating its position and informing Karkif that it intended to remove the Structures if the parties did not agree to renew the Lease term. On both January 17 and January 18, 2024, before the five-day removal period the Lease provided lapsed, CCO informed Karkif that it was ready and able to remove the Structures. On January 19, 2024—the last day of the removal period—CCO attempted to remove the Structures, but Karkif denied it access to the premises. On January 23, 2024, CCO's counsel demanded access to the premises once more. After Karkif failed to provide access, CCO filed this suit on January 26, 2024.

---

[2] A tenancy at sufferance arises "when a person who has been in lawful possession of property wrongfully remains as a holdover after his or her interest has expired." *Tenancy at Sufferance*, Black's Law Dictionary (12th ed. 2024).

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.      Breach of Contract (Count I)**

Karkif first moves to dismiss CCO's breach of contract claim. To bring a claim for breach of contract, a plaintiff must allege (1) the existence of a valid and enforceable contract, (2) that plaintiff performed its obligations under the contract, (3) that defendant breached the contract, and (4) that plaintiff suffered damages. *Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 667 (7th Cir. 2023) (citing *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 883 (7th Cir. 2022)).

Karkif contends that CCO has not sufficiently alleged the second element, that it performed its obligations under the Lease. Specifically, Karkif contends that CCO failed to secure permits to legally remove the Structures. Karkif directs the Court's attention to Sections

13-20-510 and 550 of the Municipal Code of Chicago ("MCC"),³ which relate to the erection, maintenance, and modification of signage in support of this argument. Section 13-20-550(a)(1) penalizes those who "own, maintain, erect, install, alter, repair or enlarge any sign," with Karkif arguing that § 13-20-510's definition of "alter" includes actions necessary to remove signs. CCO contends that the Court cannot consider any provisions of the MCC at the motion to dismiss stage since those sections are outside of its complaint, disputes that § 13-20-510's definition of "alter" includes "removal," and argues that Karkif violated its own duty to provide CCO access to the premises so that CCO could remove the Structures within the period the Lease provided.

While the Court may consider the relevant provisions of the MCC at the motion to dismiss stage, *see Minch v. City of Chicago*, 486 F.3d 294, 300 n.3 (7th Cir. 2007) (noting that "courts may take judicial notice of local ordinances without resorting to summary judgment procedures"), it would be premature to do so. Regardless of what the MCC requires (or does not), only Karkif raises factual allegations regarding this permitting question—not CCO. CCO's complaint does not indicate that the MCC required it to obtain a permit to remove the Structures, or even that it failed to obtain one if it needed to. It would be improper for the Court to supplement CCO's complaint with Karkif's allegations on this issue. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) ("In general, a court may only consider the plaintiff's complaint when ruling on a Rule 12(b)(6) motion."). The Court thus leaves the permitting question for another day, with a more developed record, and relies on the allegations in CCO's complaint to resolve the instant motion.

---

³ Karkif appears to have mistakenly cited MCC § 13-20-500 as the source of the statutory text instead of § 13-20-550 in its briefing.

Those allegations paint a tidy picture for breach of contract. CCO alleges that it performed its obligations under the Lease, that it is and has been ready, willing, and able to remove the Structures, that Karkif has to date denied CCO access to the premises so that it can remove the Structures, and that such denial is wrongful and constitutes a breach of contract. These allegations plainly state a claim for breach of contract under Illinois law. *See Hernandez*, 63 F.4th at 667. To the extent that discovery shows otherwise, Karkif can reraise its arguments about CCO's noncompliance with the Lease at summary judgment.

### II.     Detinue (Count II)

A plaintiff bringing a claim for detinue must allege that the defendant is wrongfully possessing property that belongs to the plaintiff. *Barber v. Ruth*, No. 90 C 6794, 1991 WL 32707, at *1 (N.D. Ill. Mar. 7, 1991) (citing *L & LC Trucking Co. v. Jack Freeman Trucking Co.*, 36 Ill. App. 3d 186, 188 (1976)). A plaintiff must also allege it has a superior right to possess the property at issue than the defendant. *Koerner v. Nielsen*, 2014 IL App (1st) 122980, ¶ 12 n.1.

Karkif argues that CCO's failure to remove the Structures in a timely manner means that it forfeited its right to remove them from the premises. Karkif cites a 111-year-old case to support its argument that a tenant cannot remove fixtures from a property after a lease period expires. *See* Doc. 18 at 12 (citing *Fellows v. Johnson*, 183 Ill. App. 42, 48–49 (1913)). In response, CCO argues that Karkif should have already granted it access to the premises to remove the Structures, so Karkif's ongoing possession is wrongful. CCO also points to clauses in the Lease affirming its ownership over the Structures and converting its tenancy to one at sufferance in the event it did not timely remove them as evidence that the Lease never contemplated forfeiture as a penalty for failing to remove the structures.

6

As the Court noted above, it is too early to determine whether CCO needed a permit to remove the Structures from the premises—as such, the Court accepts CCO's allegation that Karkif wrongly denied it access to the premises to remove the Structures. From that, it follows that Karkif cannot rely on its own wrongful retention of CCO's property to argue that CCO's right to remove the Structures lapsed due to its inability to remove them from the premises. The Lease's conversion of CCO's tenancy to one at sufferance—with explicit penalties of treble rent and CCO bearing the expense of Karkif removing the Structures—further supports CCO's claim that the Lease did not contemplate forfeiture as a penalty for CCO's untimeliness (even if the Court ultimately finds that it did need permits to remove the Structures). In other words, the Lease by its own terms appears to preclude Karkif's argument that CCO forfeited its right to recover the Structures even after the Lease expired. *See Hopwood v. Green*, 375 Ill. 167, 169 (1940) (finding that the landowner and lessee decide whether lessee's fixtures become part of the land); *see also* 735 Ill. Comp. Stat. 5/9–319 ("[A] tenant has the right to remove from the leased premises all removable fixtures erected thereon by him or her . . . while the tenant remains in possession in the character of a tenant."). As such, CCO plausibly alleges both that Karkif is in wrongful possession of the property at issue and that it has superior ownership rights to it, which states a claim for detinue under Illinois law. *See L & LC Trucking Co*, 36 Ill. App. 3d at 188 (noting "the gist of [detinue] is that defendant is wrongfully in possession of personal property belonging to plaintiff" and that a "finding for plaintiff is proper in detinue where it is established that his right to possession is superior to that of defendant"); *see also Relational Funding Corp. v. Siemens Info. & Commc'ns Networks, Inc.*, No. 00 C 180, 2000 WL 1222126, at *3 (N.D. Ill. Aug. 23, 2000) (plaintiff plausibly pleaded detinue claim after alleging "that defendants are in

default under the terms of the lease of property" and "that it is entitled to possession of the [property], which defendants possess").

### III. Conversion (Count III)

A plaintiff alleging a conversion claim under Illinois law must plead that: "(1) [plaintiff] has a right to the property; (2) [plaintiff] has an absolute and unconditional right to the immediate possession of the property; (3) [plaintiff] made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Zissu v. IH2 Prop. Ill., L.P.*, 157 F. Supp. 3d 797, 803 (N.D. Ill. 2016) (quoting *In re Karavidas*, 2013 IL 115767, ¶ 61).

Karkif maintains that CCO cannot proceed on this claim because the period for CCO to remove the Structures has passed, meaning Karkif has not wrongfully or without authorization assumed control over the Structures under the Lease. However, CCO alleges that Karkif failed to allow CCO to remove the Structures in a timely manner, which as the Court noted above undermines Karkif's claim to legitimate possession of the Structures. Although Karkif disputes CCO's allegations with respect to its alleged wrongful possession over the Structures, at the motion to dismiss stage the Court must accept all well-pleaded facts in CCO's favor. *Kubiak*, 810 F.3d at 480–81.

Here, CCO alleges that it has the right to immediately possess the Structures and that it has demanded access to remove them from Karkif's property on several occasions. CCO also pleads that Karkif has wrongly denied it access to its property to remove the Structures. These allegations plausibly state a claim for conversion. *See Bank of Am., N.A. v. Knight*, 875 F. Supp. 2d 837, 853 (N.D. Ill. 2012) (plaintiff stated conversion claim when it demanded enforcement of possession right after defendant refused to return property), *aff'd*, 725 F.3d 815 (7th Cir. 2013).

## IV.    Unjust Enrichment (Count IV)

A plaintiff bringing a claim for unjust enrichment under Illinois law must allege that "the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989). Under Illinois law, "when a contract governs the relationship between the two parties, unjust enrichment has no application." *Gociman*, 41 F.4th at 886 (citation omitted) (internal quotation marks omitted); *see also Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604 (2005) ("Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law." (citation omitted)). While a party can plead an unjust enrichment claim in the alternative to a breach of contract claim, "the unjust enrichment claim cannot include allegations of an express contract." *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25; *see also Gociman*, 41 F.4th at 887 (plaintiff cannot pursue an unjust enrichment claim after "incorporat[ing] by reference allegations of the existence of a contract between the parties").

In its complaint, CCO pleaded an unjust enrichment claim as an alternative to its breach of contract claim. As part of this claim, CCO incorporated both the allegations from the complaint's factual background section, which detail the Lease provisions, and the Lease itself as an exhibit. Karkif argues that this tactical choice requires the Court to dismiss CCO's unjust enrichment claim as it is based on conduct that the Lease expressly governs.

In response, CCO argues that its claim for unjust enrichment should nonetheless survive because it is based on tort law. An unjust enrichment claim may survive a motion to dismiss when the validity or the scope of the contract is difficult to determine, or if the claim at issue falls outside the contract. *Gociman*, 41 F.4th at 887. An unjust enrichment claim might also

survive despite the existence of a contract if the conduct giving rise to the claim is purely based on tort. *Apa v. Apa*, No. 22 C 3760, 2023 WL 6388043, at *5 (N.D. Ill. Sept. 30, 2023) ("But when a plaintiff bases his unjust enrichment claim on a *tort* theory, like fraud, then the contract does not preclude an unjust enrichment claim."). However, neither of the parties dispute the validity or scope of the Lease, and CCO did not make any tort-based allegations in support of its claim for unjust enrichment, instead relying almost entirely on allegations involving conduct the Lease governed. Thus, the Court finds that CCO fails to state a claim for unjust enrichment. *See Gociman*, 41 F.4th at 886 (finding that a valid contract is an inappropriate basis for an unjust enrichment claim). However, this dismissal is without prejudice: CCO may amend its complaint to eliminate its reliance on the Lease as the basis for its unjust enrichment claim if it can do so.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Karkif's motion to dismiss CCO's complaint [18]. The Court dismisses CCO's unjust enrichment claim against Karkif without prejudice. CCO may file an amended complaint by September 6, 2024, should it so choose.

Dated: August 13, 2024

SARA L. ELLIS
United States District Judge